**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

South Carolina Department of Social Services,
Respondent,

v.

Shanetta M. P., Jermard G., and the minor child under the age of eighteen (18) years, Defendants,

Of Whom Shanetta M. P. is the Appellant.

Appellate Case No. 2012-212256

———————————

Appeal From Spartanburg County
Usha J. Bridges, Family Court Judge

———————————

Unpublished Opinion No. 2014-UP-164
Submitted February 27, 2014 – Filed March 28, 2014

———————————

**AFFIRMED**

———————————

Duane Alan Lazenby and Ginger D. Goforth, both of Lazenby Law Firm, LLC, of Spartanburg, for Appellant.

Deborah Murdock, of Murdock Law Firm, LLC, of Mauldin, for Respondent.

Michael Todd Thigpen, of Spartanburg, for the Guardian ad Litem.

_____

**PER CURIAM:**  Shanetta M. P. (Mother) appeals the family court's termination of her parental rights to her minor son (the child), arguing clear and convincing evidence does not support terminating parental rights (TPR) based on (1) severe or repetitious harm that made it reasonably unlikely the home could be made safe and (2) a diagnosable condition unlikely to change.  Mother also argues TPR was not in the child's best interest.  We affirm.

The family court may order TPR upon finding one or more of eleven statutory grounds is satisfied and TPR is in the best interest of the child.  S.C. Code Ann. § 63-7-2570 (2010 & Supp. 2013).  The grounds for TPR must be proven by clear and convincing evidence.  *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).  "In appeals from the family court, this [c]ourt reviews factual and legal issues de novo."  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility.  *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 652 (2011).

We find clear and convincing evidence supports TPR based on harm.  A statutory ground for TPR is met when the child has been harmed "and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months."  S.C. Code Ann. § 63-7-2570(1) (2010).  Harm occurs when a parent "engages in acts or omissions which present a substantial risk of physical or mental injury to the child."  S.C. Code Ann. § 63-7-20(4)(a) (2010).  Harm also occurs when a parent "fails to supply the child with . . . supervision appropriate to the child's age and development."  S.C. Code Ann. § 63-7-20(4)(c) (2010).  We find the child was harmed when Mother left him unsupervised for an extended period of time and neighbors found him in an extremely soiled diaper.  He was harmed a second time when Mother's abuse of marijuana caused him to test positive for marijuana.  Although Mother completed drug treatment and parenting classes, she failed to attend mental health counseling between January 2011 and January 2012.  The medical records submitted by the South Carolina Department of Social Services (DSS) showed Mother had a severe mental condition that required medication and counseling.  Specifically, they indicated Mother attempted suicide and engaged in self-mutilation, she "hear[d]

voices telling [her] to do bad things," she experienced hallucinations, and she "hit her sister for no reason when [she was] frustrated." The initial clinical assessment stated, "[Mother] needs counseling to help her make wise choices for her [and] her baby." Despite her mental condition, Mother admitted she failed to attend mental health counseling between January 2011 and January 2012, and she stated Spartanburg Area Mental Health Center closed her case because she missed too many appointments. Based on the severity of Mother's mental condition and Mother's failure to obtain consistent treatment, we find clear and convincing evidence shows Mother was not reasonably likely to make her home safe within twelve months.

We also find clear and convincing evidence supports TPR based on Mother's diagnosable condition. A statutory ground for TPR is met when the parent has a diagnosable condition unlikely to change in a reasonable time that prevents the parent from providing minimally acceptable care. S.C. Code Ann. §63-7-2570(6) (2010). "When the diagnosable condition alleged is mental deficiency, there must be clear and convincing evidence that: (1) the parent has a diagnosed mental deficiency, and (2) this deficiency makes it unlikely that the parent will be able to provide minimally acceptable care of the child." *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 456, 639 S.E.2d 165, 168-69 (Ct. App. 2006). Dr. Catherine Kreiser, a psychiatrist with the Spartanburg Area Mental Health Center, testified Mother suffered from undifferentiated schizophrenia, a "treatable, but not curable" condition; thus, DSS proved the first prong of *Roe*. Although Dr. Kreiser did not explicitly testify Mother's condition made it unlikely she would ever be able to provide minimally acceptable care to the child, she testified the symptoms of schizophrenia could return if a patient did not receive counseling or take medication, and one of the symptoms that could return was "not really being in touch with reality." Dr. Kreiser further testified a minor child could be at risk if his parent was not in touch with reality. Finally, Dr. Kreiser testified Mother had a history of missing appointments at Spartanburg Area Mental Health Center. Mother admitted she did not attend counseling between January 2011 and January 2012. Dr. Kreiser's testimony indicating Mother's condition was "treatable, but not curable," Mother's medical records detailing the history of her mental illness, Mother's history of missing appointments, and Dr. Kreiser's testimony establishing a minor child could be at risk if his parent experienced symptoms of schizophrenia, cumulatively establish clear and convincing evidence showing Mother's schizophrenia made it unlikely she would ever be able to provide minimally acceptable care to the child.

Finally, we find clear and convincing evidence shows TPR is in the child's best interest. "The purpose of [the TPR statute] is to establish procedures for the reasonable and compassionate [TPR] where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption . . . ." S.C. Code Ann. § 63-7-2510 (2010). In a TPR case, the best interest of the child is the paramount consideration. *S.C. Dep't of Soc. Servs. v. Smith,* 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000). "The interest[] of the child shall prevail if the child's interest and the parental rights conflict." S.C. Code Ann. § 63-7-2620 (2010). "Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate." *S.C. Dep't of Soc. Servs. v. Sarah W.,* 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013). "The termination of the legal relationship between natural parents and a child presents one [of] the most difficult issues this [c]ourt is called upon to decide." *S.C. Dep't of Soc. Servs. v. Cochran,* 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005). "We exercise great caution in reviewing termination proceedings and will conclude termination is proper only when the evidence clearly and convincingly mandates such a result." *Id.*

The DSS caseworker and the Guardian ad Litem (the GAL) both testified TPR was in the child's best interest. Although Mother admittedly made progress on her treatment plan, she failed to attend mental health counseling for a year. Due to the nature of her mental condition, her failure to address her mental condition is significant, and the evidence showed the child could face harm in Mother's care.

We disagree with Mother's contention that the evidence showed a strong bond existed between her and the child. The DSS caseworker observed Mother interacting with the child and noted Mother barely interacted with him during the initial visitations. The caseworker also stated Mother frequently cancelled scheduled visitations at the last minute, which was disruptive to the child.

We find the child's age is also a significant factor. The child was two years old when he was removed from Mother's home, three years old when the TPR hearing was held, and he is currently five years old. Finally, the caseworker testified DSS had identified adoptive prospects; thus, the evidence suggests the child is a viable candidate for adoption. *See* S.C. Code Ann. § 63-7-2510 (2010) ("The purpose of [the TPR statute] is to establish procedures for the reasonable and compassionate [TPR] where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption . . . ."). Based on Mother's limited interactions with the child during the initial visits, which suggested a strong bond did not exist between her and the child; the child's success

in foster care; the recommendations of the DSS caseworker and the GAL; and Mother's failure to attend mental health counseling to treat her severe mental condition, we find TPR is in the child's best interest.

**AFFIRMED.**[1]

**FEW, C.J., and SHORT and GEATHERS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.